UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MINERVA TEXTILES, LTD. and VAULT       :     Case No. 13 Civ.
SPORTSWEAR, INC.,                      :     8954 (VSB)
                                       :
                                       :     ECF CASE
            Plaintiffs,                :
                                       :
        -v-                            :
                                       :
ABC SUPERSTORES, INC., *et al.*,       :
                                       :
            Defendants.                :
------------------------------------------------------------------x
SEYMOUR DAYAN,                         :
                                       :
            Counter-Plaintiff,         :
                                       :
        v.                             :
                                       :
MINERVA TEXTILES, LTD. and VAULT       :
SPORTSWEAR, INC.                       :
                                       :
            Counter-Defendants.        :
------------------------------------------------------------------x

# DEFENDANTS' JOINT RULE 56.1(b) COUNTERSTATEMENT

Pursuant to Local Rule 56.1(b), Defendants hereby respond to Plaintiffs' Local Rule 56.1(a) Statement as follows:

**Plaintiffs' Paragraph No. 1:**

Plaintiffs are affiliated companies under common ownership and control engaged in the business of designing, importing, distributing and selling women's and girl's clothing apparel. Declaration of Nouri Chaya in support of Plaintiffs' cross-motion for partial summary judgment and in opposition to Defendants' motion for

1

summary judgment, sworn to December 11, 2014 ("Chaya Decl.") at ¶ 2; *see also* Deposition Transcript of Nouri Chaya ("Chaya Tr.") (a copy of which is annexed as Ex. "A" to Defendants' Declaration In Support of Motion), at 6: 18-25.

**Defendants' Response:**

Admit, on information and belief.

**Plaintiffs' Paragraph No. 2:**

Minerva is the owner of the federally-registered and incontestable trademark, LIKE AN ANGEL® (United States Patent and Trademark Office Registration No. 2,894,863) (the "Mark") in connection with Ladies' and girls' clothing, namely, active wear, comprising leotards, jogging suits, sweatshirts, sweat pants, shorts, and tops, bottoms, shirts, pants jackets, sweaters, body suits, tights, hats, gloves, and scarves, in International Class 25 (the "Registration"). Chaya Decl. at ¶ 3 and Ex. 1 annexed thereto.

**Defendants' Response:**

Admit, on information and belief, except state that the trademark is not immune from challenge and had not reached incontestable status on the date of the filing of the initial complaint.

**Plaintiffs' Paragraph No. 3:**

The Registration is valid and subsisting, unrevoked and uncancelled. Chaya Decl. at ¶ 3.

**Defendants' Response:**

Admit, on information and belief, except state that the trademark is not immune from challenge and had not reached incontestable status on the date of the filing of the initial complaint.

**Plaintiffs' Paragraph No. 4:**

Vault holds exclusive worldwide rights to design, market, purchase, distribute and sell women's and girl's clothing apparel under or bearing the Mark. Chaya Decl. at ¶ 4.

**Defendants' Response:**

Lack insufficient knowledge or information, but do not dispute for purposes of the present motions for summary judgment only.

6686055v.1

**Plaintiffs' Paragraph No. 5:**

Since 1998, Plaintiffs have continuously and exclusively been using the Mark in connection with their lines of women's and girl's clothing. Chaya Decl. at ¶ 5.

**Defendants' Response:**

Lack sufficient knowledge or information, but do not dispute for purposes of the present motions for summary judgment only.

**Plaintiffs' Paragraph No. 6:**

Vault is, and always has been, the only one authorized or permitted to sell apparel bearing the Mark at the wholesale level. Plaintiffs do not have any licensees or authorized distributors permitted to sell apparel bearing the Mark. Chaya Decl. at ¶ 6.

**Defendants' Response:**

Deny as contrary to the testimonial admissions of Plaintiffs' representative regarding Plaintiffs' authorization given to the factories contracted by Plaintiffs to re-sell goods, including goods bearing Plaintiffs' mark on the buttons and rivets of the subject goods (First Declaration of Jura Zibas ("First Zibas Decl."), Ex. A.2 (Deposition of Nouri Chaya ("Chaya Dep.") at 140:14-141:2; 180:9-16; 184:17-23; 145:6-8, 23-25; 146:2-4, 18-22; 181:4-22).

**Plaintiffs' Paragraph No. 7:**

All factories under contract to produce goods bearing the Mark for Plaintiffs are prohibited under all circumstances from selling any goods with Plaintiffs' label *(i.e.,* bearing the Mark) to anyone other than Plaintiffs, regardless whether the goods are first quality, defective, cancelled or in any other condition. Chaya Decl. at ¶ 6.

**Defendants' Response:**

Deny in the absence of any documentary or other competent evidence and incorporate by reference Defendants' response to paragraph nos. 6, 35.

**Plaintiffs' Paragraph No. 8:**

Plaintiffs have invested heavily in creating, maintaining, promoting and selling their brand of women's and girl's clothing under the Mark. Through the efforts of, among other things, Plaintiffs' designers, manufacturers and sales force, Plaintiffs have achieved an outstanding reputation and widespread recognition among the trade and consuming public for designing and selling quality women's and girls' clothing and apparel under the Mark. Chaya Decl. a ¶ 7.

**Defendants' Response:**

Deny in the absence of any documentary or other competent evidence and incorporate by reference Defendants' response to paragraph no. 6, 35.

**Plaintiffs' Paragraph No. 9:**

As a result of Plaintiffs' extensive and exclusive use of the Mark, the Mark has earned valuable goodwill and has come to be identified and relied upon by the trade and consuming public as indicating high quality women's and girl's clothing apparel originating from a single source: Plaintiffs. Chaya Decl. at ¶ 8.

**Defendants' Response:**

Deny in the absence of any documentary or other competent evidence and incorporate by reference Defendants' response to paragraph no. 6, 35.

**Plaintiffs' Paragraph No. 10:**

Plaintiffs' products feature the Mark displayed on, among other things, a distinctive interior label with stylized font on a black background, an example of which as follows: [ ].  Chaya Decl. at ¶ 9.

**Defendants' Response:**

Admit, on information and belief

**Plaintiffs' Paragraph No. 11:**

Defendant Gilbar Trading, Inc. d/b/a Sketch 36 ("Gilbar") is a New York Corporation with a principal place of business at 1407 Broadway, Suite 1403, New York, NY 10018.  *See* Gilbar's Answer and Affirmative Defenses (Doc. 17) (admitting ¶ 19 of Plaintiffs' Complaint (Doc. 1)).

**Defendants' Response:**

Admit.

**Plaintiffs' Paragraph No. 12:**

Defendants ABC Super Stores, Inc., A.B.C. Variety Stores of Greenpoint, Inc., ABC Stores of Myrtle Avenue Inc., ABC Superstores of Fresh Pond Road, Inc., ABC Superstores of Westchester Sq. Inc. and ABC Superstores of Wyckoff Avenue, Inc. (collectively, "ABC") are all corporations organized and existing under the laws of the New York with a principal executive office at 58-08 Myrtle Avenue, Ridgewood, New York 11385.  *See* Answer of ABC Defendants at ¶ 5

(Doc. 26) (admitting ¶¶ 11, 12, 13, 14, 15, 16 and 17 of Plaintiffs' Complaint (Doc. 1))

**Defendants' Response:**

Admit.

**Plaintiffs' Paragraph No. 13:**

Defendants ABC Super Stores, Inc., A.B.C. Variety Stores of Greenpoint, Inc., ABC Stores of Myrtle Avenue Inc., ABC Superstores of Fresh Pond Road, Inc., ABC Superstores of Westchester Sq. Inc. and ABC Superstores of Wyckoff Avenue, Inc. are commonly owned, operated and controlled by entity, individual or group of individuals. *See* Answer of ABC Defendants at ¶ 5 (Doc. 26) (admitting ¶ 18 of Plaintiffs' Complaint (Doc. 1))

**Defendants' Response:**

Admit.

**Plaintiffs' Paragraph No. 14:**

Gilbar and ABC (collectively, "Defendants"), among others, sold for profit "jeggings" (jeans-Ieggings) bearing Plaintiffs' identical Mark on interior labels that are indistinguishable from the labels used on Plaintiffs' genuine goods (individually or collectively, the "Infringing Apparel"). Chaya Decl. at ¶¶ 10, 11, 13, 26, 27.

**Defendants' Response:**

Admit, on information and belief, except clarify that the jeggings sold are Plaintiffs' genuine goods and, according to Plaintiffs, the jeggings contained Plaintiffs' "actual labels" with Plaintiffs' "actual Mark," as opposed to labels with Plaintiffs' "identical" mark. Chaya Decl., Exs. 3 and 4.A at 1; Plaintiffs' Complaint (Doc. 1) ¶ 73.

**Plaintiffs' Paragraph No. 15:**

In or around May 2013, Plaintiffs discovered that ABC was marketing, distributing, offering for sale and/or selling for profit Infringing Apparel, including selling several units to Plaintiffs. Chaya Decl. at ¶ 11, and Ex. 2 annexed thereto.

**Defendants' Response:**

Deny the existence of any "Infringing Apparel" and that ABC was marketing or distributing the subject "jeggings," except admit that ABC was offering for sale and/or selling for profit the jeggings and lack sufficient knowledge or information

5

regarding when Plaintiffs discovered that ABC was selling the jeggings, which is not disputed for purposes of the present motions for summary judgment only.

**Plaintiffs' Paragraph No. 16:**

Plaintiffs sent ABC a letter, dated May 22, 2013, demanded ABC immediately cease and desist their violations of, *inter alia,* trademark and counterfeiting laws, and requesting an accounting of certain information concerning ABC's acquisition and sale of the Infringing Apparel, accompanied by supporting documentation. Chaya Decl. at ¶ 12, and Ex. 3 annexed thereto.

**Defendants' Response:**

Admit, except deny ABC violated any trademark and counterfeiting laws.

**Plaintiffs' Paragraph No. 17:**

In response to Plaintiffs' May 22, 2013 letter, ABC informed Plaintiffs, among other things, that ABC purchased the Infringing Apparel from Gilbar. Chaya Decl. at ¶ 13.

**Defendants' Response:**

Admit, except deny the existence of any "Infringing Apparel."

**Plaintiffs' Paragraph No. 18:**

Plaintiffs thereafter sent Gilbar a letter, dated June 3, 2013, demanding Gilbar immediately cease and desist its violations of, *inter alia,* trademark and counterfeiting laws, and requesting an accounting of certain information concerning ABC's acquisition and sale of the Infringing Apparel, accompanied by supporting documentation. Decl. at ¶ 14, and Ex. 4.A annexed thereto.

**Defendants' Response:**

Admit, except deny the existence of any "Infringing Apparel" and that Gilbar violated any trademark and counterfeiting laws.

**Plaintiffs' Paragraph No. 19:**

In response to Plaintiffs' June 3, 2013 letter, Gilbar sent Plaintiffs two letters, dated June 6, 2013 and June 13, 2013, respectively (collectively, "Gilbar's Letters"). Chaya Decl. at ¶ 15, and Ex. 4.B. and 4.C. annexed thereto.

**Defendants' Response:**

Admit.

**Plaintiffs' Paragraph No. 20:**

Following receipt of Gilbar's Letters, Plaintiffs sent Gilbar a follow-up letter, dated June 25, 2013, explaining that Gilbar failed to provide any substantive information or responses to the enumerated items in Plaintiffs' June 3, 2013 letter, and several of the purported responses Gilbar did offer were "patently inconsistent with one another, meaning, at least some, if not all, of those statements must be false." Chaya Decl. at ¶ 16, and Ex. 4.D. annexed thereto.

**Defendants' Response:**

Admit, except deny the allegations set forth in the subject letter.

**Plaintiffs' Paragraph No. 21:**

Gilbar's Letters stated Gilbar purchased the Infringing Apparel from "Oakbeach International, located at 1375 Broadway, Third Floor, New York, NY 10018." However, neither the name nor the address provided by Gilbar was correct. Rather, Plaintiffs identified a company named "Oakbeach Enterprises, Inc." located at "1357 Broadway, Ste. 414, New York, New York." ("Oakbeach"). Chaya Decl. at ¶¶ 18-19, and Ex. 4.B annexed thereto.

**Defendants' Response:**

Admit in part, except deny the existence of any "Infringing Apparel" or that Gilbar knowingly provided any incorrect information, and deny sufficient knowledge or information regarding what Plaintiffs identified.

**Plaintiffs' Paragraph No. 22:**

Shortly after Plaintiffs filed this lawsuit, Gilbar produced two Invoices purportedly issued by Oakbeach to Gilbar in connection with the Infringing Apparel, dated January 15, 2013 and March 25, 2013, respectively, both of which show "Oakbeach Ent. Inc." located at "1357 Broadway, Ste 414, New York, New York." Chaya Decl. at ¶ 19, and Ex. 5 annexed thereto.

**Defendants' Response:**

Admit.

**Plaintiffs' Paragraph No. 23:**

Gilbar admits its June 6, 2013 letter to Plaintiffs falsely states: "Prior to purchase, [Gilbar] had investigated the label in question only to find no protection on [Plaintiffs'] registered trademark, 'Like An Angel'." In particular, on July 30, 2014, Seymour Dayan, an officer of Gilbar, appeared for a deposition on behalf of Gilbar and testified that Gilbar never did "any sort of investigation into whether

the LIKE AN ANGEL was a registered mark" "before the fact," or "prior to the lawsuit." Chaya Decl. at ¶¶ 20-2 I, and Ex. 6 annexed thereto, Transcript of Deposition of Seymour Dayan, Jul. 30, 2014 ("Dayan Tr."), at 100:25-101:4; 103:6-13; *see also id.* at 214:22-24 (admitting Gilbar "didn't do anything" to investigate the Mark).

**Defendants' Response:**

Deny that Gilbar knowingly made any false statements, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 24:**

Gilbar further admits that the "Customs and Border Protection" document referenced in Gilbar's June 6, 2013 letter "was actually supplied to [Gilbar] by [Oakbeach's owner] when [Mr. Dayan] told him that [Gilbar was] having [a] problem" with the Infringing Apparel, and not "prior to the purchase as the letter states." Chaya Decl. at ¶ 22 (citing Ex. 6 thereto, Dayan Tr. at 214:7-215:7).

**Defendants' Response:**

Deny that Gilbar knowingly made any false statements, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 25:**

Gilbar also concedes that the statement in Gilbar's Letters that "[t]he garments containing [Plaintiffs'] label were sold to ABC Super Stores, Inc." was misleading, and Gilbar intentionally hid the existence and/or withheld the names of its other customers who purchased the Infringing Apparel because Gilbar "didn't want to give up more customers" and "open a can of worms" and "[m]ake it a broader problem." Chaya Decl. at ¶ 23 (citing Ex. 6 thereto, Dayan Tr. at 215:8-216:6; 2 I9:2 I-220: 19)

**Defendants' Response:**

Deny on the grounds that Plaintiffs mischaracterize the testimony cited, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 26:**

Gilbar's Letters represent that "upon receiving [Plaintiffs'] letter, any and all distribution of merchandise with [Plaintiffs'] labels ha[d] ceased, and [Gilbar]

8

ha[d] removed any and all identifying labels from the remainder of [its] inventory." Chaya Decl. at ¶ 24, and Ex. 4.B and 4.C annexed thereto.

**Defendants' Response:**

Admit to the extent that the content of the letter speaks for itself, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 27:**

In or around November 2013, Plaintiffs purchased several units of Infringing Apparel from 3 Floors Dept. Store, an entity Plaintiffs subsequently discovered is actually a "d/b/a" controlled by "Fordham Retail LLC" ("3 Floors"). Chaya Decl. at ¶ 26, and Ex. 7 annexed thereto.

**Defendants' Response:**

Deny the existence of any "Infringing Apparel" and lack sufficient knowledge or information regarding the remaining purported facts, which are not disputed for purposes of the present motions for summary judgment only.

**Plaintiffs' Paragraph No. 28:**

Gilbar produced in discovery three invoices that Gilbar issued "Fordham Retail" (*i.e.*, 3 Floors) in connection with Gilbar's sale of Infringing Apparel to 3 Floors, dated June 12, 2013, June 18, 2013 and June 30, 2013, respectively. Hence, all three of these invoices from Gilbar to 3 Floors were not only issued after Gilbar received Plaintiffs' June 3, 2013 cease and desist letter, but also after the date of Gilbar's Letters wherein it claimed that "upon receiving [Plaintiffs'] letter, any and all distribution of merchandise with [Plaintiffs's] labels ha[d] ceased, and [Gilbar] had] removed any and all identifying labels from the remainder of [its] inventory." Chaya Decl. at ¶¶ 27-28, and Ex. 8 annexed thereto.

**Defendants' Response:**

Admit to the extent that the invoices and letters speak for themselves, but deny the existence of any "Infringing Apparel."

**Plaintiffs' Paragraph No. 29:**

Gilbar admits it does not have any evidence that the labels bearing Plaintiffs' Mark were actually removed from the Infringing Apparel. Chaya Decl. at ¶ 29 (citing Ex. 6, thereto, Dayan Tr. at 235:4-6; 238:16-21).

**Defendants' Response:**

Deny as Plaintiffs mischaracterize the testimony cited, and deny the existence of any "Infringing Apparel," and further state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 30:**

Gilbar did not save or preserve any of the labels bearing the Mark which Gilbar supposedly removed from the Infringing Apparel. Chaya Decl. at ¶ 29 (citing Ex. 6 thereto, Dayan Tr. at 235:7-8; *see also id.* at 235:9-236:20).

**Defendants' Response:**

Admit that Gilbar did not preserve the labels it removed from the allegedly infringing apparel, but deny the existence of any "Infringing Apparel," and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 31:**

Mr. Dayan testified that he did not personally remove the labels bearing Plaintiffs' Mark from all Infringing Apparel then in Gilbar's inventory, and he has no first-hand knowledge that the labels bearing Plaintiffs' Mark were actually removed from the Infringing Apparel. Chaya Decl. at ¶ 29 (citing Ex. 6, thereto, Dayan Tr. at 232:3-235:3; *see also id.* at 228:25-229: 1)

**Defendants' Response:**

Deny as Plaintiffs mischaracterize the testimony cited, and deny the existence of any "Infringing Apparel," and further state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 32:**

Gilbar admits that after receiving Plaintiffs' cease and deist letters, it did not consult counsel before determining how to proceed. *See* Ex. 6 to Chaya Decl., Dayan Tr. at 221: 12-13 (testifying that after receiving Plaintiffs' cease and desist letters, "[Gilbar] did what [he] thought was best" without consulting counsel.)

**Defendants' Response:**

Deny, except admit the quoted portions of deposition testimony, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 33:**

Based on Gilbar's own documents and admissions, Gilbar cannot dispute that: (a) Gilbar did not remove the labels bearing Plaintiffs' Mark from the Infringing Apparel following receipt of Plaintiffs' June 3, 2013 or June 28, 2013 cease and desist letters; (b) Gilbar continued to sell the Infringing Apparel bearing Plaintiffs' identical Mark after receiving Plaintiffs' cease and desist letters; and (c) any representations to the contrary by Gilbar in its June 6 and June 13, 2013 Letters, or during Mr. Dayan's deposition, are false. Chaya Decl. at ¶¶ 24-30.

**Defendants' Response:**

Deny as Plaintiffs mischaracterize the testimony cited, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 34:**

Defendants' sales of the Infringing Apparel bearing Plaintiffs' identical Mark - which is not genuine, and is of inferior quality to Plaintiffs' authentic goods - is not just likely, it is certain, to cause consumer confusion. Chaya Decl. at ¶ 10; *see also* Def. Ex. A, Chaya Tr. At 157:17-19; 158:4-7.

**Defendants' Response:**

Deny and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 35:**

Plaintiffs did not sell the Infringing Apparel, nor did they ever authorize or license anyone else (including the factories that produce goods bearing the Mark for Plaintiffs) to produce, import, distribute or sell the Infringing Apparel. And, no one other than Plaintiffs is authorized or permitted to produce and sell goods bearing the Mark at the wholesale level (*i.e.,* Plaintiffs do not have licensees or authorized distributors who are permitted to produce and sell/resell genuine goods bearing the Mark). Chaya Decl. at ¶ 32; *see also* Def. Ex. A, Chaya Tr. at 11:7-12:12, Tr. 136:9-24; 183:2-22.

**Defendants' Response:**

Deny the existence of any "Infringing Apparel," and deny the remaining purported facts as contrary to the following:

(1) The testimonial admissions of Plaintiffs' representative that:

> (a) It was "highly possible," "highly probable," and "very probable" that the goods at issue originated from Plaintiffs' own contracted factories in

11

Pakistan (First Zibas Decl., Exs. A, A.2 (Chaya Dep. at 22:9-19; 24:6-25:12; 47:19-48:2; 86:24-87:5; 132:16-133:8, 137:5-9));

(b) The factories contracted by Plaintiffs are never instructed to destroy defective garments and are authorized to re-sell defective goods (*Id.* at 140:14-141:2; 180:9-16; 184:17-23);

(c) Plaintiffs authorize the factories contracted by Plaintiffs to sell defective goods bearing Plaintiffs' mark on the buttons and rivets of the subject goods (*Id.*, Ex. A.2. at 145:6-8, 23-25; 146:2-4, 18-22; 181:4-22);

(d) Plaintiffs do not recall any specific goods being rejected at their factories that would correspond with the goods at issue in this case (*Id.*, Ex. A at 20:18-23);

(e) Plaintiffs are unaware of what quality standards, if any, are put in place at the factories contracted to produce the subject goods (*Id.*, Ex. A.2 at 172:2-14);

(f) Plaintiffs are unaware of what quality standards, if any, are used by Plaintiffs' buying agents that purportedly conduct merely "a check and balances" of the quality control standards of the factories contracted by Plaintiffs and Plaintiffs' buying agents inspect only a fraction of the goods (*Id.* at 172:2-14; 173:4-174:10);

(g) "Every order we produce will have a side effect of some garments being defective" (*Id.* at 138:7-9);

(h) "There is an allowance" for a certain quantity of defective goods produced by the factories contracted by Plaintiffs (*Id.* at 177:19-24);

(i) Defective goods are not inherently inauthentic (*Id.* at 17:11-19);

(j) Plaintiffs do not oversee any inspections purportedly performed for Plaintiffs, they do not know how inspectors are trained, and their knowledge of whether the inspectors undergo any training regarding Plaintiffs' purported requirements is based on merely discussing such requirements with the owner and some of the inspectors of one of Plaintiffs' buying agents during a visit "a lifetime ago" (Second Declaration of Jura Zibas ("Second Zibas Decl."), Ex. E (Supplemental Deposition of Nouri Chaya ("Chaya Suppl. Dep.") at 83:18-86:22));

(k) Plaintiffs "don't get involved" with any of the specifics of quality control standards and procedures, if any, used by the factories contracted by Plaintiffs (*Id.* at 111:15-112:8);

(l) If goods were rejected during the relevant time period, there would have been an inspection sheet relating to the rejected goods, which

12

>Plaintiffs would have produced (*Id*. at 77:5-10)—no such production has been made;
>
>(m) Plaintiffs have no prohibitions whatsoever on the sale of Plaintiffs' defective goods by retailers that sell Plaintiffs' goods, as Plaintiffs' representative testified that he is "sure" a certain number of goods shipped for sale will have "major defect[s]" and be sold as part of larger lots and that the retailers who identify such defective goods are permitted to do as they please with such goods, including "just sell them as irregulars" (*Id*. at 121:23-122:15);

(2) Plaintiffs' failure to produce any documentary evidence of any rejected goods that would correspond with the goods at issue in this case (First Zibas Decl., Ex. B (Plaintiffs' Objections and Responses to Gilbar Trading Inc.'s Supplemental and Second Supplemental Request for Production of Documents and Things, at 11-12));

(3) Documents showing several instances of approved goods shipped from Pakistan that do correspond with the goods at issue in this case (First Zibas Decl., Ex. C (PLAINTIFFS 001215, 001246, 001281, 001296, 001312, 001329, 001348, 001360, 001390, 001408, 001424, 001438, 001453, 001594, 001608, 001621, 001635, 001648));

(4) Plaintiffs testified that the records they produced to date are comprehensive (Second Zibas Decl., Ex. E (Chaya Suppl. Dep. at 27:18-25), and yet none of the records reflect any jeggings having been rejected at Plaintiffs' contracted factories during the relevant period.  Plaintiffs conceded that the majority of these documents did not pertain to the relevant time period at all, and were, in fact, produced in "error."  (*Id*. at 35:3-11; 45:7-47:10; 52:20-54:17).  Plaintiffs' representative also testified that many of the documents actually related to garments other than the jeggings at issue in the subject action.  (*Id*. at 91:15-100:25).  Ultimately, Plaintiffs were only able to identify eight (8) pages within Plaintiffs' supplemental document production that both related to jeggings and fell discernibly within the relevant time period.  (*Id*. at 101:2-110:18).  Of those eight pages, seven related to inspections that were top of production or preproduction inspections, meaning that the records did not pertain to an inspection of an actual lot of goods that was ready for shipment.  (*Id*. at 107:2-110:18).  Only a single page related to jeggings, bore a discernible date within the relevant time period, and reflected an inspection of a lot that was ready for shipment.  That shipment was approved for sale.  (*Id*. at 107:25-108:2-14).

(5) The lack of any uniform requirements for inspection certificates provided by only *one* of Plaintiffs' buying agents who is purportedly tasked with inspecting the goods for quality (First Zibas Decl., Exs. A, A.2 (Chaya Dep. at 30:6-10; 197:9-23; 198:10-20)) and the absence of any reference to any requisite specifications for approval, apart from style number and quantity, on those occasions when inspection certificates are provided (*Id*., Ex. C (PLAINTIFFS

13

001215, 001246, 001281, 001296, 001312, 001329, 001348, 001360, 001390, 001408, 001424, 001438, 001453, 001594, 001608, 001621, 001635, 001648));

**Plaintiffs' Paragraph No. 36:**

When asked by Defense counsel "Do [Plaintiffs] know where [the Infringing Apparel] originated," Plaintiffs' 30(b)(6) witness responded "[T]he care labels say 'made in Pakistan,' [t]hat's the only thing [Plaintiffs] could be 100 percent sure of." Chaya Decl. at ¶ 33; *see also* Def. Ex. A, Chaya Tr. at 17:25-18:5).

**Defendants' Response:**

Admit, except deny the existence of any "Infringing Apparel".

**Plaintiffs' Paragraph No. 37:**

Plaintiffs do not know where the Infringing Apparel originated because they did not produce or sell the Infringing Apparel. The Infringing Apparel was produced, imported, distributed and sold without Plaintiffs' knowledge or authorization. Chaya Decl. at ¶ 36; *see also* Def. Ex. A, Chaya Tr. At 22:9-19; 24:2-25:3; 47:12-48:2; 136:13-23; 164:23-165:5.

**Defendants' Response:**

Deny and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 38:**

Plaintiffs 30(b)(6) witness testified that, based on his examination of the units of Infringing Apparel purchased from ABC and 3 Floors, including, among other things, the labels (including, those saying "Made In Pakistan"), the graphic prints and the styles, he "believes" it is "possible" that the Infringing Apparel may have been produced at a factory in Pakistan that manufactured genuine goods bearing the Mark for Plaintiffs under contract, Chaya Decl. at ¶ 34; *see also* Def. Ex. A, Chaya Tr. at 22:9-19; 23:14-16; 24:6:11; 25:4-7, yet he also testified it is "possible" that the Infringing Apparel were copies or reproductions of Plaintiff's genuine goods manufactured by a factory with no relationship to Plaintiffs. Chaya Decl. at ¶ 35; *see also* Def. Ex. A, Chaya Tr. at 134:13-137:14.

**Defendants' Response:**

Deny the existence of any "Infringing Apparel" and to the extent the quoted testimony is taken out of context, including the testimony of Plaintiffs' representative that Plaintiffs reached "no conclusion" regarding whether the subject goods were a reproduction or a copy of Plaintiffs' goods (First Zibas Decl., Ex. A.2 (Chaya Dep. at 134:13-137:10) and that it is "highly probable" that the subject goods are "from plaintiffs' factories" (*Id*. at 137:5-9).

14

**Plaintiffs' Paragraph No. 39:**

Gilbar testified that it has no knowledge where the Infringing Apparel originated, from whom Oakbeach purchased the Infringing Apparel, or who or how many people were involved before the Infringing Apparel reached Oakbeach. Thus, Defendants concede they cannot trace the chain of title for the Infringing Apparel beyond Oakbeach to show that Gilbar's, or any other Defendants', alleged authority to sell the lnfringing Apparel flows from Plaintiffs. Chaya Decl. at ¶¶ 38-39 (citing Ex. 6 thereto, Dayan Tr. at 104: 14-17; 110: 16-23; 134: 19-21; 157: 18-24).

**Defendants' Response:**

Admit, except deny the existence of any "Infringing Apparel" and that Defendants have conceded anything and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 40:**

Mr. Dayan testified that he spoke to Oakbeach's owner, both on the telephone and in person in New York, and Oakbeach has actual knowledge of this lawsuit. Chaya Decl. at ¶ 40 (citing Ex. 6 thereto, Dayan Tr. at 67: 11-19; 90:4-14).

**Defendants' Response:**

Admit and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 41:**

Plaintiffs obtained a default against Oakbeach on March 10, 2014 after Oakbeach failed to appear in this action. *See* Doc. 25 (Clerk's Certificate of Default against Oakbeach).

**Defendants' Response:**

Deny as a matter of law as a Clerk's Certificate of Default is not equivalent to an Order of Default, and further state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 42:**

All of the units of Infringing Apparel Plaintiffs purchased from ABC and 3 Floors have defects, and are of an overall inferior quality and craftsmanship that does not

6686055v.1

meet Plaintiffs' high standards for authentic goods bearing the Mark. Chaya Decl. at ¶ 41; *see also* Chaya Tr. at 12:23-16:16; 134:27-137:14; 158:5-7.

**Defendants' Response:**

Deny and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 43:**

Defendants concede that all units of Infringing Apparel contain flaws and defects, and are not Plaintiffs' genuine, first quality goods. Chaya Decl. at ¶ 42. In particular, Gilbar's June 6, 2013 Letter to Plaintiffs identifies the Infringing Apparel as "an assortment of *irregular* stretch pants" Chaya Decl., Ex. 4.B thereto (emphasis added). In the garment industry, the term "irregulars" is used to refer to garments that fall below the manufacturer's standards and usual specifications. Irregulars are imperfect goods that have flaws and defects, many of which are not always evident to the naked eye. Chaya Decl. at ¶ 42.

**Defendants' Response:**

Deny the existence of any "Infringing Apparel" and that the subject goods are not Plaintiffs' genuine goods, and incorporate by reference Defendants' response to paragraph no. 35, and further state that Defendants lack sufficient information or knowledge regarding the term "irregulars."

**Plaintiffs' Paragraph No. 44:**

In addition, Gilbar testified that "people buy from [Gilbar] knowing they're not getting top quality." Chaya Decl. at ¶ 42 (citing Ex. 6 thereto, Dayan Tr. at 128:12-(4); and, no one "can manufacture [goods] for the price that [Gilbar] buys goods" *id.* (citing Dayan Tr. 105:19-22); and, "[i]f someone is able to manufacture something for the price [Gilbar is] paying, then [Gilbar] paid too much." *Id.* (citing Dayan Tr. at 106:3-7).

**Defendants' Response:**

Admit that the quoted text appears in the deposition transcript of Seymour Dayan, and state that the purported facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

**Plaintiffs' Paragraph No. 45:**

Plaintiffs did not, and never would, sell or authorize the sale of the Infringing Apparel which is materially different from Plaintiffs' authentic goods and does not meet Plaintiffs' high standards and specifications for quality. Chaya Decl. at ¶ 44; *see also,* 134:27-137:14.

**Defendants' Response:**

Deny and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 46:**

Before being approved for shipment and delivery to Plaintiffs, all goods bearing the Mark produced by factories under contract for Plaintiffs follow a defined process, and undergo numerous levels of inspection and quality control before, during and after the production process to ensure they all meet Plaintiffs' rigorous specifications, requirements and standards for quality.  Chaya Decl. at ¶¶ 45-66, and Ex. 9 and 10 annexed thereto; *see also* Chaya Tr. at 28:22-29:17; 100:17-102:3; 170:3-174:5; 174:6-178:13; 178:25-180:7; 197:8-14.

**Defendants' Response:**

Deny and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 47:**

These procedures include multiple rounds of initial inspections, measurements and approvals before the bulk production even begins; inline audits and inspections, both by the factory's own quality control personnel of every garment coming off the production line, and by Plaintiffs' buying agent on a random selection of goods being produced; and, a final inspection by Plaintiffs' buying agent using the internationally-recognized and generally-accepted industry standard for product inspections known as "Acceptance Quality Limit," or "AQL" (ISO Standard 2895-1: 1999).  *Id.*

**Defendants' Response:**

Deny and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 48:**

AQL is a defined method and procedure used to measure a production order sample to determine whether or not the entire production has met the client's specifications.  Product inspectors using AQL consult "AQL tables," which are statistical tools that help determine: (1) how many samples should be picked and inspected, among a batch of product; and, (2) where is the limit between acceptability and refusal, when it comes to defective products.  Chaya Decl. at ¶¶ 53-54.

6686055v.1

**Defendants' Response:**

Lack sufficient knowledge or information, except state that Plaintiffs' have produced no documentary evidence of the purported facts set forth in this paragraph.

**Plaintiffs' Paragraph No. 49:**

All Factories under contract to produce goods bearing the Mark for Plaintiffs are instructed that they are prohibited from disposing of any garments with Plaintiffs' labels (i.e., bearing Plaintiffs' Mark), regardless whether they are first quality, defective, overruns or cancelled. All goods bearing the Mark must either be sold to Plaintiffs, or the factories must remove Plaintiffs' labels from any goods before disposing of them. Chaya Decl. at ¶ 63; *see also,* Def. Ex. A, Chaya Tr. 139:8-13; 141:22-142:2; 180:8-20.

**Defendants' Response:**

Deny in the absence of any documentary or other competent evidence and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 50:**

Plaintiffs have never given their buying agents or a factory that produces goods bearing the Mark for Plaintiffs, any directions or indication, either explicitly or implicitly, that they are permitted or authorized to sell goods with the Mark to anyone other than Plaintiffs. Chaya Decl. at ¶ 65.

**Defendants' Response:**

Deny in the absence of any documentary or other competent evidence and incorporate by reference Defendants' response to paragraph no. 35.

**Plaintiffs' Paragraph No. 51:**

It is a generally-accepted practice and custom in the garment industry to remove, deface or black-out the labels bearing a trademark before offering to sell or selling goods which were rejected/not approved or cancelled by the trademark owner. Chaya Decl. at ¶ 66; *see also* Ex. 4.B and 4.C, thereto, Gilbar's Letters; and, Ex. 6, thereto, Dayan Tr. at 230:22-231: 1; 233:812; 235:21-23.

**Defendants' Response:**

Deny as Plaintiffs mischaracterize the cited testimony of Seymour Dayan, and deny knowledge or information sufficient to establish what is generally-accepted practice and custom in the garment industry, and further state that the purported

facts set forth in this paragraph are not material to the issues in connection with the present motions for summary judgment.

Dated:   New York, New York
         March 27, 2015

| WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP | MEYERS TERSIGNI FELDMAN & GRAY LLP |
|---|---|
| By:   s/ Jura C. Zibas<br>Jura C. Zibas<br>Stephen Barrett<br>Attorneys for Defendants Gilbar Trading, Inc. d/b/a Sketch 36<br>150 East 42d Street<br>New York, NY  10017<br>(212) 490-3000 | By:   s/ Andrea Tersigni<br>Anthony L. Tersigni (AT 5980)<br>Andrea Tersigni (AT 1771)<br>Attorneys for ABC Defendants<br>14 Wall Street, 30th Floor<br>New York, New York 10005<br>(212) 422-1500 |

6686055v.1